People v Crowley (2025 NY Slip Op 00248)

People v Crowley

2025 NY Slip Op 00248

Decided on January 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 16, 2025

CR-23-0860
[*1]The People of the State of New York, Respondent,
v
Jamie I. Crowley, Appellant.

Calendar Date:November 19, 2024

Before:Aarons, J.P., Reynolds Fitzgerald, Ceresia, McShan and Mackey, JJ.

Edward E. Kopko, Ithaca, for appellant.
Mary E. Saitta, Special Prosecutor, Binghamton, for respondent.

Reynolds Fitzgerald, J.
(1) Appeal from a judgment of the County Court of Broome County (Carol A. Cocchiola, J.), rendered January 20, 2023, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree, menacing in the second degree (two counts), criminal possession of a weapon in the third degree (three counts) and criminal possession of a firearm (two counts), and (2) motion to supplement the record on appeal.
Based upon his conduct in the late nighttime hours of July 2, 2021, continuing into the early hours of July 3, 2021, defendant was indicted on the charges of criminal possession of a weapon in the second degree (two counts), menacing a police officer or peace officer (two counts), reckless endangerment in the first degree, criminal possession of a weapon in the third degree (three counts) and criminal possession of a firearm (two counts). County Court denied defendant's subsequent motion to suppress physical evidence seized from his residence. Following a jury trial, defendant was acquitted on the counts of reckless endangerment in the first degree and menacing a police officer or peace officer, and, instead, was convicted of two counts of the lesser charge of menacing in the second degree and found guilty of all remaining charges. Defendant was thereafter sentenced to seven years in prison, to be followed by five years of postrelease supervision, on the criminal possession of a weapon in the second degree conviction, and lesser concurrent prison terms on the other convictions. Defendant appeals.
Initially, defendant contends that the jury's verdict as to the menacing charges is against the weight of the evidence. "In a weight of the evidence analysis, we first determine whether, based upon all of the credible evidence, a different verdict would have been unreasonable and, if it would not have been, we then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Taylor, 207 AD3d 806, 807 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 942 [2022]; see People v Hadlock, 218 AD3d 925, 926 [3d Dept 2023], lv denied 40 NY3d 997 [2023]). "When conducting this review, this Court considers the evidence in a neutral light and defers to the jury's credibility assessments" (People v Moore, 223 AD3d 1085, 1087 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 41 NY3d 1003 [2024]; see People v Hadlock, 218 AD3d at 927). As relevant here, "[a] person is guilty of menacing in the second degree when . . . [h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law[*2]§ 120.14 [1]).
According to trial testimony, along with body camera video evidence introduced by the People, at approximately 10:30 p.m. on July 2, 2021, a woman pulled into or near defendant's driveway to turn around after accidentally driving by her relative's residence.[FN1] Defendant approached the woman's vehicle carrying a revolver and, as she pulled away, he fired a gunshot in the air as a warning not to trespass on his property. She thereafter contacted the Broome County Sheriff's office and reported the incident. After interviewing the woman, two deputies went to defendant's residence to further investigate the incident. The officers testified that they arrived at defendant's address at approximately 12:30 a.m., parked their vehicles on the road below defendant's residence and proceeded up defendant's driveway, intermittently turning on their flashlights as they approached. Approximately halfway up the driveway, the deputies stated that they heard voices and music and that a motion detector light went on. They observed defendant, who was seated in the enclosed front porch, get up, move across the enclosed porch and step outside onto a landing holding a revolver in his right hand. The deputies stated — and the body camera video confirms — that they identified themselves by calling out, "Sheriff's Office, how you doing?" Once they saw the gun, they told the defendant to drop his weapon. Instead of complying, he pointed the revolver straight at them, causing them to fear for their safety. One deputy testified that "I was looking down the — straight down the barrel of the revolver and I thought I was going to die." The other deputy testified that defendant pointed the firearm directly at them and stated: "I was scared he was going to kill us." The People also introduced evidence demonstrating that the revolver was operable, loaded and was fired during the incident.
Defendant testified on his own behalf, telling the jury that he had a poor relationship with his next-door neighbors, due to an earlier confrontation over code enforcement. On the night of the incident, he believed his neighbors pulled their vehicle into the driveway and, after approximately one and a half minutes when the vehicle had still not left, he became scared and retrieved his revolver. When he walked toward the vehicle with the revolver in his hand, the vehicle left quickly and he fired a warning shot to prevent them from trespassing again. Defendant reloaded the revolver and left it on top of an item in the enclosed porch. A couple hours later, when he saw lights coming up the driveway, he assumed it was his neighbors coming back to retaliate, he grabbed his revolver and started to go outside. The music was loud, and he never heard the deputies say anything. He further stated it was dark outside, he couldn't see anything and "didn't know what I was pointing at."
Although a different verdict may not have been unreasonable, when viewing the evidence in a neutral light and deferring [*3]to the jury's credibility determinations, the People adduced evidence that defendant pointed a loaded, operable revolver at the deputies, who testified that they were fearful for their lives, establishing the essential elements of the menacing charge. Accordingly, the verdict is not against the weight of the evidence (see People v Mosher, 226 AD3d 1260, 1261 [3d Dept 2024], lv denied 42 NY3d 929 [2024]; People v Imes, 226 AD3d 1080, 1082 [3d Dept 2024], lv denied 41 NY3d 1019 [2024]; People v Benjamin, 183 AD3d 1125, 1128 [3d Dept 2020]).
Defendant next contends that County Court erred in denying his motion to suppress all physical evidence. "[I]t is axiomatic that meaningful appellate review requires a clear and complete record as, without it, appellate courts are left unable to render an informed decision on the merits" (People v Abreu, 227 AD3d 1190, 1192 [3d Dept 2024] [internal quotation marks and citation omitted]). The record on appeal is wholly devoid of any suppression documentation, including defendant's motion and County Court's order. As it is defendant's obligation to prepare a complete record for appeal, his failure to do so renders the record insufficient for meaningful appellate review (see People v Smith, 147 AD3d 1527, 1530 [4th Dept 2017], lv denied 29 NY3d 1087 [2017]; People v O'Halloran, 48 AD3d 978, 979 [3d Dept 2008], lv denied 10 NY3d 868 [2008]). Like County Court, we decline defendant's urging to determine the suppression issue based on the testimony and facts presented at trial. The record is clear that, at the commencement of the trial, County Court made it clear that defendant's argument with respect to suppression, namely that the police were in fact trespassing onto defendant's property at the time of the incident, was a matter of law that had been denied by the court in a written decision dated December 13, 2021, and that as such defendant was precluded from arguing this to the jury. Defendant again raised this argument in his motion to dismiss made at the conclusion of the People's case. The court reiterated its position that the issue had been decided by the written pretrial order and referred him and any appellate review to same. As the arguments submitted in support of suppressing the evidence, as well as County Court's decision and attendant reasoning for denying the motion, are not contained in the trial transcripts, and defendant has failed to include said papers in the record, we cannot review defendant's claim of error due to his failure to submit an adequate record (see People v Smith, 147 AD3d at 1530; People v O'Halloran, 48 AD3d at 979; People v Taylor, 231 AD2d 945, 946 [4th Dept 1996], lv denied 89 NY2d 930 [1996]).
Finally, we deny defendant's motion, made subsequent to oral argument on the appeal, for leave to file a supplemental record.[FN2] Defendant was initially advised by the People, via their respondent's brief,[FN3] that the suppression motion and decision were not included in the record. More importantly[*4], the People argued that without these documents, meaningful review of the issue by this Court was not possible. Defendant filed a reply brief on July 8, 2024, arguing that this Court could review the suppression matter absent County Court's decision on the motion or underlying motion papers by "decid[ing] for itself, based on the testimony and facts presented at trial." On September 25, 2024, this Court's Clerk's office forwarded written correspondence to both defendant and the People advising them that the suppression documentation was not included in the record on appeal, and further advising that if either party intended to file a motion to supplement the record, the motion should be made forthwith. Defendant did not then move to supplement the record. At oral argument, when this Court inquired as to the missing documentation, defendant's counsel stated that the People submitted it in their responsive papers. This was not true. As it is defendant's obligation to prepare a complete record for appeal (see People v O'Halloran, 48 AD3d at 979), and defendant's counsel elected not to take advantage of these numerous opportunities to correct his mistake, the motion to supplement the record at this late stage of the appeal is denied. Likewise, considering that counsel rejected the attempt by the Clerk's office to remedy his error, we decline to take judicial notice of the subject documentation.
Aarons, J.P., Ceresia, McShan and Mackey, JJ., concur.
ORDERED that the motion is denied.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The woman's relatives were defendant's next-door neighbors.

Footnote 2: This Court notes that the People's brief and defendant's reply brief make reference to a single suppression motion and order. Defendant's motion to supplement the record references multiple motions and orders.

Footnote 3: The People's brief was filed on June 26, 2024.